1        UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF TENNESSEE
2                NASHVILLE DIVISION

3

4   UNITED STATES OF AMERICA)
                            )
5   VS                      )No. 3:14-cr-007-2
                            )
6   BRIAN MANOOKIAN         )
    _____
7

8    BEFORE THE HONORABLE TODD J. CAMPBELL, DISTRICT JUDGE

9              TRANSCRIPT OF PROCEEDINGS

10                   June 19, 2015

11  _____

12  **APPEARANCES:**

13  For the Government:  WILLIAM FRANCIS ABELY, II
                         US Attorney's Office
14                       110 Ninth Ave S., Suite A961
                         Nashville, TN 37203
15

16  For the Defendant:   KIMBERLY S. HODDE
                         Hodde & Associates
17                       40 Music Square East
                         Nashville, TN 37203
18

19

20

21  _____
    TRANSCRIPT PREPARED FROM NOTES OF CATHY LEIGH, OCR:
22
    **Roxann Harkins, RPR, CRR**
23  Official Court Reporter
    801 Broadway, Suite A837
24  Nashville, TN 37203
    615.403.8314
25  roxann_harkins@tnmd.uscourts.gov

1

2  (The following transcript has been prepared by Roxann

3  Harkins, Official Court Reporter, to the best of her

4  abilities from the steno notes of Cathy Leigh,

5  Official Court Reporter, who passed away August 30,

6  2019.)

7

8          The above-styled cause came to be heard

9  on June 19, 2015, before the Hon. Todd J. Campbell,

10 District Judge, when the following proceedings were

11 had, to-wit:

12

13         THE COURT:  Good afternoon.  We're here

14 in the case of *United States versus Brian Manookian*,

15 and the purpose of this hearing is a sentencing.

16 Previously the Court accepted the plea of guilty and

17 approved the plea agreement and it is made in part

18 under Rule 11(c)(1)(C) for a binding sentence.  And

19 some sentencing issues are still reserved for the

20 Court.

21         I want to begin with Ms. Hodde to see if

22 your client has read the presentence report and if

23 there are any objections to it.

24         MS. HODDE:  Yes, Your Honor.  He has

25 reviewed the presentence report.  We have reviewed it

1    together.  There are no objections to the presentence
2    report, except that Mr. Abley and I did catch an error
3    in the presentence report that I included in my
4    sentencing memorandum which related to a fine amount
5    in this case.
6                    THE COURT:  Yes.
7                    MS. HODDE:  And I don't know if that's
8    truly an objection.  It is really a correction to the
9    presentence report.  The statutory maximum fine in
10   this case is a thousand dollars pursuant to the
11   misdemeanor statute that Mr. Manookian pled to.
12                    THE COURT:  It sounds like an objection
13   to me.  I will give you both a chance to comment on
14   that.  But it appears that you are correct.  It
15   further appears that the plea agreement that was
16   entered into in this case had the wrong fine amount.
17   And I want to make sure that that does not change
18   anyone's opinion about going forward or whether it is
19   knowing and intelligent and voluntary.
20                    So certainly that change is in favor of
21   your client.  But I want to make sure that you are not
22   raising an issue about the plea itself.
23                    MS. HODDE:  No, Your Honor.  I don't -- I
24   believe Mr. Abley and I are on the same page.  And I
25   think if the Court were to look back, at the time of

1   the plea Mr. Abley provided the Court with an

2   explanation of the elements of the offense.  He

3   provided correct statutory designation of a thousand

4   dollar fine.  It was an oversight on our part at the

5   time of the plea drafting.  It was something we should

6   have caught that we didn't catch in drafting.  It has

7   not changed anything from my perspective, but I will

8   certainly let Mr. Abley speak for himself.

9           THE COURT:  Okay.  We're just about to

10  hear from him.  Mr. Abley.

11          MR. ABELY:  Thank you, Your Honor.  Well,

12  there has been some confusion and changing positions

13  about the maximum amount of the fine.  I think it is

14  largely academic but still worth clarifying.

15  Probation this week -- and I haven't had a chance to

16  raise this with Ms. Hodde -- pointed out that under

17  18 U.S.C. 3571, which affixes the fine amounts, it

18  would specify a maximum fine of a hundred thousand

19  dollars for a Class A misdemeanor.

20          THE COURT:  And that's what's in the

21  presentence report.

22          MR. ABELY:  And that's what's in the

23  presentence report.  I actually, upon further

24  reflection, I think the presentence report is correct.

25  Under 3571(e) it specifies that -- I read 3571(e) to

1    mean if another statute sets a different maximum fine

2    and also expressly exempts the offense from the

3    applicability of 3571, then that maximum holds.

4              But as odd as it is, I believe that even

5    though the statute to which Mr. Manookian has pled

6    specifies a maximum fine of one thousand dollars, that

7    Congress has basically said even though we said that

8    there, we don't mean it.  3571 should carry the day.

9    And it is all a little bit confusing.  Again, I think

10   it is academic here.

11             THE COURT:  Well, it is not academic

12   because I have to make a finding on it.  And what are

13   you to make of the general rule that specific controls

14   the general for statutory construction?

15             MR. ABELY:  Well, Your Honor, I think

16   3571(e) in stating -- and this is in a general way.

17   Certainly doesn't apply to the Food, Drug and Cosmetic

18   Act or any specific act.  But it states that if a law

19   setting forth an offense specifies no fine or, as in

20   this case, a fine that is lower than the fine

21   otherwise applicable under this section and such law

22   by specific reference exempts the offense from the

23   applicability of the fine, I think there the

24   reference -- I read the language by specific reference

25   to mean that the other statute has to somehow

1    acknowledge that 35 -- acknowledge the existence of

2    3571 and exhibit an intent to disregard it.

3            I am actually -- off the top of my head,

4    I am not aware of any such other statutes that set a

5    maximum fine specifically reference 3571.  But in

6    terms of statutory construction, in terms of 3571(e)

7    and the principle to give purpose or meaning to all

8    parts of that subsection, I think that the two

9    requirements here, that it sets a fine that's lower

10   and that it by specific reference exempts it, I think

11   that second portion has to mean something.

12           THE COURT:   Okay.  I will hear from

13   Ms. Hodde.

14           MS. HODDE:  Your Honor, may I take a look

15   at the statute here that Mr. Abley was --

16           THE COURT:  Yes.  Take your time.

17           MS. HODDE:  Your Honor, the way that I

18   read this is is that this is a generic catch-all

19   maximum fine for Class A misdemeanor of not more than

20   a hundred thousand dollars.  And it seems that logic

21   would apply that obviously if the misdemeanor offense

22   doesn't specify what the fine amount is, then you

23   would default to this statute to determine what the

24   potential maximum fine is.

25           But our statute does specifically provide

1  for a cap of not more than a thousand dollars or both.

2  I mean, this is similar in the sense of those statutes

3  that provide for the maximum penalties for A felonies,

4  B felonies, et cetera, and then you take a look -- if

5  you don't specify what the penalty is but, for

6  example, bank fraud is up to three years or tax fraud

7  is up to five years or ten years or whatever the

8  specific statute designates, if it didn't designate a

9  penalty, then you would default to the felony statute

10 to determine what the penalty is.  I view this as is

11 in the same vein as those statutes that are kind of a

12 backup to the specific statute.  That directs itself

13 towards the conduct itself.  I mean, I don't know what

14 else --

15            THE COURT:  You are talking about

16 maximum.  This is talking about if the fine is lower

17 than what's set out in 3571, so I didn't quite follow

18 you.

19            MS. HODDE:  But if the Court takes a look

20 at 3571(b) fines for individuals --

21            THE COURT:  Yes.

22            MS. HODDE:  -- and this is a generic

23 statute that applies based on the felony level or the

24 misdemeanor level that we're looking at.  If it is a

25 felony up to $200,000, if a misdemeanor up to not more

1     than a hundred thousand dollars.  This is just a

2     generic catch-all statute.

3             THE COURT:  Yes.

4             MS. HODDE:  And my point is that we don't

5     need the generic catch-all statute in this case

6     because we have a specific declaration in the statute

7     that applies to the offense to which Mr. Manookian

8     pled, which is 21 U.S.C. -- the penalty provision is

9     21 U.S.C. 333(a)(1), which says that for this

10    particular violation of law you shall not be

11    imprisoned for more than one year or fined not more

12    than a thousand dollars or both.  So it seems as

13    though that would govern.

14            Now in subsection E, specific rules for

15    lower fines specified in substantive provisions, I am

16    not sure what this is supposed to mean by specific

17    reference.  If a law setting forth an offense

18    specifies no fine or a fine that is lower than the

19    fine otherwise applicable under this section -- which

20    is clearly what we have, a maximum fine that is lower

21    on the applicable fine under this section -- and such

22    law by specific reference exempts the offense from the

23    applicability of the fine otherwise applicable under

24    this section, the defendant may not be fined more than

25    the amount specified in the law setting forth the

1    offense.

2              I don't know how we -- I agree with the

3    Court.  I mean, the general rule of statutory

4    construction is that the specific governs, not the

5    general.  And this is clearly a general catch-all

6    statute.  I realize this is a specific provision under

7    the general catch-all statute, but it still -- it is

8    hard to reconcile that the specific statute to which

9    Mr. Manookian pled has a fine of not more than a

10   thousand dollars but the generic fine of up to a

11   hundred thousand dollars could possibly be applicable.

12   I mean, it just doesn't really reconcile.  I know this

13   is not very helpful to the Court.

14             THE COURT:  Which was passed in law

15   first?

16             MS. HODDE:  Well, it looks like this

17   statute was passed in 1984 and then amended several

18   times as late as 1995.

19             THE COURT:  What do you mean, this?

20             MS. HODDE:  This the generic statute,

21   18 U.S.C. 3571.

22             THE COURT:  Okay.

23             MS. HODDE:  And the 21 U.S.C. 333 was

24   passed originally in 1970 and has been amended as

25   recently as January 1, 2015.  So the specific was in

1    place before the general was in place.

2                THE COURT:   Are you talking about

3    Section 331 or Section 333?

4                MS. HODDE:  21 U.S.C. 333.

5                THE COURT:   And it was last amended

6    when?

7                MS. HODDE:  It looks like, based on what

8    I have in front of me, it was last amended January 1,

9    2015.

10               THE COURT:   That's what I have.  Okay.

11               MS. HODDE:  I would argue to the Court

12   that the specific penalty set forth in 18 U.S.C. 333

13   is the appropriate penalty in this case.  It is up to

14   a thousand dollars.  Now, as to --

15               THE COURT:   Well, it is complicated by

16   the fact that the crime of conviction ended in 2009.

17   But we'll put an asterisk there.

18               MS. HODDE:  I don't think this particular

19   section was what was amended in 2015, it doesn't look

20   like, but I didn't also print out the full legislative

21   history on the statute.  I didn't anticipate getting

22   into this debate with the Court.  My last discussion

23   with Mr. Abley was prior to his sentencing filing in

24   this case, which he agreed with me, that the statutory

25   penalty was correct.  So this is an evolution this

1       afternoon for me.

2                       THE COURT:  Okay, thank you.

3                       Mr. Abley, anything else?

4                       MR. ABELY:  Your Honor, I would just add

5       that I would tend to agree with Ms. Hodde.  I don't

6       know where exactly this leaves us that the Section 333

7       that sets out the $1,000 fine is hard to reconcile

8       with that general fine provision.  Again, I assume the

9       Congress must have meant something when they specified

10      a maximum fine of $1,000 in that statute.  So I agree

11      with her, it is difficult to reconcile the two.

12                      THE COURT:   Okay, thank you.  I am

13      finding that the maximum fine is a thousand dollars.

14      It is precisely in the section that provides the

15      penalties for Section 331.  Section 333(a)(1)

16      expressly states that the imprisonment must be for not

17      more than one year or fine not more than a thousand

18      dollars.

19                      Section 3571 is in conflict with that.  I

20      think the specific controls the general.  And if not,

21      this is a classic case of not adequate notice of what

22      the penalty is.  Similar to Caligula putting the laws

23      of ancient Rome on the top of buildings where nobody

24      could read them, and this has the same effect.

25                      So I am finding that it is a thousand

1    dollars in this case because the very statute that

2    applies sets the fine amount.  And it is more recently

3    amended than the general statute.

4                     Any objections?

5                     MS. HODDE:  No, Your Honor.

6                     MR. ABELY:  No, Your Honor.

7                     THE COURT:  Okay.  I am going to make

8    some findings, then, for the record.  Starting with

9    the offense level computations, the record should

10   reflect I am aware that the guidelines are advisory,

11   not mandatory.  Beginning with a base offense level of

12   6 for the pertinent guideline.  There is a-cross

13   reference and the cross-reference directs the

14   guideline provision for fraud to be used, and that's

15   also a base offense level of 6.

16                     There is a 14-level enhancement because

17   less than -- excuse me, more than $400,000 but less

18   than $1 million was involved.  And there is a

19   three-level reduction for acceptance of responsibility

20   for a total offense level of 17.

21                     In terms of criminal history, there is

22   Criminal History Category I.  Mr. Manookian has no

23   criminal history points.

24                     In terms of the guidelines, the custody

25   provision is controlled by statute.  The maximum term

1  of imprisonment is one year.  If the guidelines apply,

2  it would be a greater amount, would be 24 to 30 months

3  but clearly the guideline provision becomes the

4  statutory provision because of the statutory maximum,

5  which is one year.

6  Supervised release provision also --

7  since this is a misdemeanor, Class A misdemeanor, it

8  is a supervised release term of one year with the

9  guidelines.

10  Probation under the guidelines is not an

11  eligibility because of the Zone D, but by statute

12  there is eligibility for up to five years.

13  And the fine range we just talked about.

14  And I am making the finding this is statutorily

15  limited to $1,000.  And there is a $25 special

16  assessment.

17  Any objection regarding any of that?

18  MS. HODDE:  No, Your Honor.

19  MR. ABELY:  No, Your Honor.

20  THE COURT:  Mr. Abley, would you like to

21  introduce any proof?

22  MR. ABELY:  No, Your Honor.

23  THE COURT:  Ms. Hodde, would you like to

24  introduce any proof?

25  MS. HODDE:  No, Your Honor.

1          THE COURT:  I need to inform

2     Mr. Manookian that he has a right to address the Court

3     if he wants to.  If he does not want to, that's his

4     right as well.  In other words, it is his choice.  He

5     can be thinking about that and talking to his lawyer

6     as I call upon the government to state its position

7     regarding sentencing and then I'll turn to the

8     defendant.

9          MR. ABELY:  Thank you, Your Honor.

10          The government recommends a sentence of a

11     term of probation of one year with supervision to

12     include a period of home confinement of nine months,

13     and in addition a fine of $1,000.  And the statutorily

14     required special assessment, which I understand

15     Mr. Manookian has already paid.

16          THE COURT:  Can I just ask you one

17     interpretive question?

18          MR. ABELY:  Of course.

19          THE COURT:  The presentence report talks

20     about positive monthly cash flow.  But the total

21     monthly cash flow is in parentheses, which normally

22     means negative.  I am looking at page 19, if it is

23     helpful, paragraphs 78, the end of.  On page 18 under

24     total net worth it is a negative amount, I interpret

25     it.  So it seems like the presentence report is

1   internally inconsistent, and I just wanted to know

2   what I missed.

3           MR. ABELY:  And I am sorry, Your Honor, I

4   see the portion that shows the negative monthly cash

5   flow.  With what were you contrasting that?

6           THE COURT:  Paragraph 80, based on the

7   defendant's positive monthly cash flow, it says.  It

8   is a quote.

9           MR. ABELY:  I agree, Your Honor.  It

10  certainly seems, from the financial condition section,

11  that there is a negative monthly cash flow.

12          THE COURT:  Kind of like the two

13  statutes.

14          MR. ABELY:  Yes.  Something else in

15  conflict.  Yes, Your Honor.

16          THE COURT:  So the conundrum continues.

17  Thank you.  I just wanted to make sure I didn't

18  misread it.

19          MR. ABELY:  I don't believe so.  Thank

20  you.

21          THE COURT:  Ms. Hodde, I realize that

22  the fine discussion is extending into time longer than

23  perhaps other things of importance to you, but I would

24  want you to address this as to how you reconcile, if

25  you do, that the presentence report talks about

1   positive monthly cash flow but expresses it in

2   negative number.

3            MS. HODDE:  He doesn't have a positive

4   monthly cash flow, clearly.  I mean, the negative

5   number reflects a negative cash flow.  I think if the

6   Court were to take a look at the cash flow in the PSR,

7   what the Court would see is that the cash flow is

8   driven, to large extent, by something I am going to

9   mention here in a second, which is this collateral

10  civil litigation that he is involved in.

11           THE COURT:   Nashville Armory?

12           MS. HODDE:  Correct.

13           THE COURT:   What is that?  Is that a

14  nightclub?

15           MS. HODDE:  No, Your Honor.  It is a gun

16  range over off of I-65 in the Brentwood area.  It is

17  one of the -- I think it is the only five-star

18  accredited gun range in Tennessee.  Mr. Manookian is

19  one of two partners in that business and they have

20  been in ongoing litigation for years now.

21           Actually, they formed the business and

22  then very shortly after forming the business they

23  began litigation about what their partnership meant

24  and how proceeds from that business were to be

25  distributed.  So they have been in litigation far

1　longer than they were ever happily in business

2　together.

3　　　　　　I think that is the thing that impacts

4　cash flow.  The fact that he is spending so much

5　out-of-pocket to pay for civil attorneys fees in the

6　Nashville Armory case.  What I suspect probation meant

7　by talking about prospective future income is

8　Mr. Manookian has recently started a law practice that

9　is gaining momentum.  I think that you know he is

10　hopeful that his cash flow situation is going to be

11　positive.  But also there is hope on the horizon that

12　the Nashville Armory litigation will come to an end

13　and that expense won't be there either.  So without

14　speaking for probation, what I suspect is that that is

15　what they were trying to convey.

16　　　　　　THE COURT:  Well, I understood he was --

17　his income came from something else than law practice.

18　Maybe I misread this.  It talked about his income

19　having the potential of going up.  And let me focus on

20　that for a moment.  In Footnote 5, the defendant

21　reported that his salary is expected to significantly

22　increase throughout the year due to anticipated

23　increase in monthly earnings.  And there was some

24　other reference too.  That was at least the second

25　one.

1          MS. HODDE:  That relates to his law

2     practice.

3          THE COURT:  Okay.  Let me ask you this

4     as for prospective law practice.  This is a

5     misdemeanor.  And do you expect the Tennessee Board of

6     Professional Responsibility will allow Mr. Manookian

7     to continue practicing law or do you expect that to be

8     in doubt?

9          MS. HODDE:  I believe that they will

10    continue to allow Mr. Manookian to practice law.  This

11    is not a crime of dishonesty to which Mr. Manookian

12    has pled.  It is a strict liability crime, if the

13    Court were to do a -- and I am looking at it from the

14    Board of Professional Responsibility's -- through

15    their lens.

16         THE COURT:  What I am looking at is

17    whether he is going to have the ability to pay a fine.

18    That's my interest.

19         MS. HODDE:  I don't know how to answer

20    that.  Obviously the board will answer that over time.

21    I mean, he has been in touch with the board.  He is

22    responsive to the board.  He self-reported to the

23    board.

24         I do not anticipate that the board is

25    going to take his license, but I could be wrong about

1    that. I seriously doubt that I am wrong about that
2    given the fact that this is not a crime of dishonesty.
3    And the board obviously takes that very seriously.
4              THE COURT:  I interrupted you.  I am
5    sorry.
6              MS. HODDE:  That's how I view this.  I
7    don't believe that they are going to take his license.
8    I believe he is going to be continuing to practice
9    law, given the fact that this is not a crime of
10   dishonesty.
11             THE COURT:  Okay.  Here the business is
12   described as Cummings Manookian, PLC.  Is that the law
13   firm?
14             MS. HODDE:  It is.
15             THE COURT:  Okay.  All right.  Now I am
16   straight on that.  Okay.
17             MS. HODDE:  So, Your Honor --
18             THE COURT:  And I apologize for
19   misunderstanding the Nashville Armory.  I have had
20   various incidents at Nashville Armory over the years.
21             MS. HODDE:  I may be vaguely familiar
22   with some of the experiences you are referencing, but
23   I won't confess to that.
24             THE COURT:  One Armory allowed the
25   entire Vice Lord gang to hold a party.

1           MS. HODDE:  I remember that.  I was in
2    that case, I believe.
3           THE COURT:   That was an odd decision,
4    but that's only one of many Armorys that have come
5    this way.
6           MS. HODDE:  Let's be clear that was not
7    the gun range.
8           THE COURT:   I am not suggesting that was
9    the case here, but I just wanted to make sure that's
10   that I knew that's what it was.
11          MS. HODDE:  It is not the same Nashville
12   Armory.  That actually, so the Court is clear, is a
13   facility also out on I-65.
14          THE COURT:   By Sidco Drive.
15          MS. HODDE:  I think it is an ROTC owned
16   facility, military owned.
17          THE COURT:   It is, which makes the
18   decision to rent it out to a violent gang even more
19   interesting.
20          MS. HODDE:  It does.
21          Your Honor, on this case, though, this is
22   a case when Mr. Manookian was charged originally and,
23   of course, the superseding indictment also alleges the
24   same offenses, which I believe that Mr. Abley is going
25   to be dismissing today.

1          He was charged with various violations of
2    FDA regulations related to the sale and distribution
3    of Melanotan II between 2007 and 2009 by the company
4    Melanocorp, which Mr. Manookian was involved with
5    along with his father, Ed Manookian, who was the
6    company principal, and his sister, Karen Manookian,
7    who was more of a hands-on daily worker in the
8    business.  And they also had an additional employee
9    there who also was working selling Melanotan II within
10   the States but primarily abroad.

11          And this was a case that was indicted on
12   the eve of the statute of limitations.  Mr. Manookian,
13   as the Court is well-aware, is a 33-year-old gentleman
14   who is very well-educated, very well-spoken.  He went
15   to Vanderbilt Law School.  He is a practicing
16   attorney.  He's admitted to practice in this court.

17          And he is somebody that, you know, has
18   been through a lot in the last several years.  He's
19   had a couple of failed business ventures.  The
20   Nashville Armory is actually a wildly successful
21   business, but he's had a terrible dispute with his
22   business partner in that ongoing litigation.

23          He's been through additional litigation
24   in the form of a divorce recently.  The marriage
25   didn't last long, but the divorce has lasted a very

1    long time, and that is finally in the books as well.

2              And like I said, Mr. Manookian has been

3    engaged in litigation for a very long time related to

4    the Nashville Armory.  Because of that civil

5    litigation and the very aggressive and active

6    misinterpretations of everything that has happened in

7    this case by the civil litigants in the Nashville

8    Armory case, every time something happens here it goes

9    and gets kind of misreported.  And as a criminal

10   defense lawyer every time I see what happens in the

11   Nashville Armory case I say to myself, these people

12   don't understand federal criminal statutes.

13   Essentially because of that kind of prolific

14   misreporting of what happens in this case, I have

15   advised Mr. Manookian not to allocute today for the

16   sake of not having anything additional on the record

17   today that would be then misreported.  So he is going

18   to decline, if he takes my advice, and not allocute

19   today.

20              THE COURT:  Well, it is his choice.  I

21   don't have any expectation.  Simply an opportunity if

22   he wants it.

23              MS. HODDE:  The Court has already

24   observed that Mr. Manookian has no criminal history

25   points in this case.  He is a Criminal History

1  Category I.  He has no history of drug and alcohol

2  abuse.  He was raised in an excellent home with two

3  loving parents.

4              And the parties in this case, after

5  sitting down and working very hard over an extended

6  period of time, came up with what we believe was a

7  very fair and accurate resolution of how this case

8  should play out for Brian Manookian.

9              And that was to plead him to a

10  misdemeanor offense that was a strict liability crime

11  and one that is not a crime of dishonesty.  And

12  Mr. Abley and I are on the same page about that.

13  We're more on the same page than we were 30 minutes

14  ago on the fine issue, apparently, but we have

15  discussed it.  We both agree that it is a strict

16  liability crime and it is not a crime of dishonesty.

17              That was something that we very carefully

18  examined when we chose this particular offense to

19  plead Mr. Manookian to.  It is, of course, a

20  misdemeanor offense as this Court is well aware.  And

21  I would ask the Court to impose a sentence that we

22  have agreed to in the plea agreement.

23              I would ask the Court to impose a

24  12-month period of probation with nine months home

25  detention as a special condition of probation without

electronic monitoring was our agreement.  We have paid
the $25 statutory mandatory special assessment.  We
paid that today on the way into the courtroom.  And,
of course, he would have the statutory fine as the
Court has held up to a thousand dollars.

I certainly understand the Court's
concern about imposing fines for somebody that appears
in a PSR to have a negative cash flow.  I know that is
not something that the courts typically do when you
show a negative cash flow.  Unfortunately, I think
that's going to have to be something the Court
determines.  We agree that the statutory fine is up to
a thousand dollars.  And I would ask the Court to
impose a fine appropriately as the Court measures it.
Thank you.

THE COURT:  Mr. Abley, anything else?

MR. ABELY:  No.  Thank you, Your Honor.

THE COURT:  It is the duty of the Court
to impose a sentence that's sufficient but not greater
than necessary.  In order to do that, I need to look
at the Section 3553 factors.  I am going to walk
through those and then form an opinion and impose
sentence.

The beginning point here is that
Mr. Manookian has entered into an 11(c)(1)(C) plea

1  agreement for probation of one year followed by nine

2  months of home confinement not on electronic

3  monitoring. And the Court accepted the plea of guilty

4  and approved the plea agreement and I reaffirm that at

5  this time.

6         And in terms of what the parties are

7  requesting, the parties are in agreement that the

8  agreed sentence should be imposed. There is a little

9  tension between them about what the fine should be,

10 but that's a matter for determination for the Court

11 and not part of the plea agreement.

12        The nature and circumstances of the

13 offense. The crime of conviction is a misdemeanor.

14 Count 7, which is introduction of an unapproved new

15 drug in violation of 21 U.S.C. Section 331(d) and that

16 is the crime of conviction. As part of the plea

17 agreement, Counts 1, 2 and 4 through 6 will be

18 dismissed at the conclusion of this sentencing.

19        History and characteristics of the

20 defendant. Mr. Manookian is approximately 33 years

21 old. He is a well-educated man. He's got a JD degree

22 from Vanderbilt. His father and sister are

23 co-defendants in this case. And he is currently

24 self-employed at Cummings Manookian, which is a law

25 firm.

1          In terms of the seriousness of the
2    offense, of course, all federal crimes are serious.
3    That's why federal courts exist.  And having made that
4    point, this is among the less serious of the offenses
5    I see.  It is a misdemeanor offense.  Not to detract
6    from the criminal offense, but it is rare that there
7    is a misdemeanor that I preside over.
8          Respect for the law.  Mr. Manookian has
9    no criminal history points.  He is in the fairly rare
10   position of not graduating from the state court to
11   federal court based on his criminal history points and
12   he has zero.
13         Just punishment is really an aggregation
14   of all of this.
15         Deterrence.  There is specific deterrence
16   and general deterrence.  The agreed sentence is
17   sufficient to accomplish the goal of specific
18   deterrence.  In terms of general deterrence, the
19   troubling part about this case deals with the conduct
20   of co-defendant in communications about essentially
21   tying up the federal government in court.
22         More financially rewarding than ceasing
23   business.  And there is no indication that
24   Mr. Manookian was part of those comments, and so I
25   think there is specific.  The general deterrence is

1    specifically taken into account in this agreed

2    sentence.

3              Protect the public.  The Court is aware

4    of the need to do that.  This business is no longer

5    operating.

6              Needed educational or vocational

7    training, medical care or other correctional

8    treatment, that doesn't apply.

9              Kinds of sentences available I have

10   identified.  The advisory guideline range I have

11   identified.  Policy statements, there is not anything

12   that's particularly controlling.

13             Unwarranted sentencing disparities.  That

14   is an issue that the Court has considered, and I am

15   aware of sentences generally having presided over 19

16   plus years of them and, of course, sentences that are

17   imposed nationwide.  And this is consistent with them

18   and not unwarranted sentencing disparities.

19             And restitution is not an issue.

20   So those are the factors that the Court is going to

21   take into account.

22             And Mr. Manookian, I am going to impose

23   the agreed sentence of one year of probation followed

24   up to nine months -- excuse me, followed by nine

25   months, followed by nine months in home detention, and

1    that's the first nine months of the one-year term of

2    probation.  And there will be no electronic monitoring

3    at this time.  Of course, if there is subsequent

4    violation, that would be reconsidered.

5              And the following special conditions

6    apply to the conditions of supervision in addition to

7    the first nine months on home detention.  You are

8    prohibited from owning, carrying or possessing

9    firearms, destructive devices or other dangerous

10   weapons.

11             You have to furnish financial records to

12   the probation office upon request.

13             You are barred from engaging in any

14   occupation or profession in which you sell or

15   distribute peptides or skin care products.

16             And you are ordered to pay a fine

17   totaling $1,000.  I have considered your cash flow and

18   income, and I am convinced that given your financial

19   condition you can pay a $1,000 fine.  That is due

20   immediately.

21             If for some reason you are not able to

22   pay it immediately, then you do have to pay at least

23   ten percent of your gross monthly income.  No interest

24   shall accrue on the fine as long as you are in

25   compliance with any payment schedule dictated by the

1    Probation Office.

2              Bear with me for one second.  I want to

3    discuss this so that we have clear guidance on it.

4    The probation office recommended the condition of

5    firearm restriction, and no party has objected to

6    that.  But the fact that the defendant is a part owner

7    in the Nashville Armory, which is a gun facility, I

8    wanted to see what the parties had by way of

9    expectation of how that would be implemented so we

10   make sure that there are no inadvertent mistakes.

11             MS. HODDE:  Your Honor, we addressed that

12   in the context of pretrial supervision, and what we

13   came up with was we structured some language on the

14   release conditions that addressed Mr. Manookian's

15   business.  I was also concerned about that prohibition

16   on pretrial release given his business.

17             THE COURT:  Here is why I am raising it.

18   I want to make sure that there is no what is

19   considered -- would be considered indirect possession

20   of firearms by almost a virtual ownership interest.

21   That's not what I intend.

22             MS. HODDE:  I appreciate the Court

23   clarifying that.  I would also like to clarify one

24   additional thing that this firearm prohibition is for

25   the purpose of probation safety during supervision.

1   This is not something -- he is not a prohibited

2   person --

3              THE COURT:  He is not a felon.

4              MS. HODDE:  -- of 18 U.S.C. 922(g) or

5   those misdemeanor provisions that make you a

6   prohibited person under that statute as well.

7              THE COURT:  Well, just to be clear -- and

8   I want to hear from Mr. Abley.  What I have in mind is

9   Mr. Manookian physically possessing or indirectly

10  controlling firearms at his direction rather than

11  globally owning a business.  Mr. Abley, what do you

12  have in mind?  I just want us to be clear so that if

13  we get into a revocation proceeding, we're discussing

14  it now rather than later.

15             MR. ABELY:  I can understand that,

16  Your Honor, and I agree.  And I agree with I think

17  what Ms. Hodde was alluding to regarding the purpose

18  of this special condition.  And I think everybody in

19  the courtroom wants to craft this in a way that allows

20  Mr. Manookian to continue his ownership of the

21  Nashville Armory in such a way that it won't result in

22  a violation of his conditions.

23             Am I correct in interpreting Your Honor's

24  recent comments as meaning that you want to revise the

25  wording slightly of the condition you read out

1  earlier?

2          THE COURT:  I just want to make sure

3  everyone has a common understanding of this general

4  provision that's virtually imposed in every case.  We

5  have -- and, frankly, the standard conditions of the

6  Court also deal with not possessing firearms.  So it

7  is really imposed in two ways.  And what I am

8  interpreting this to mean in this instance is that

9  Mr. Manookian should not have personal possession of

10  firearms.  Or -- well, I guess, that's what I really

11  mean.  Is that what you have in mind?

12          MR. ABELY:  It is, Your Honor.

13          THE COURT:  Possession can be indirect,

14  and that's the thing I want to clarify.

15          MR. ABELY:  Certainly.  I think we're in

16  agreement that what this prohibits is personal

17  possession.  What this does not prohibit is his owning

18  a corporate entity that may itself, separate and apart

19  from the person of Mr. Manookian, possess a firearm.

20          THE COURT:  Now that I am looking at the

21  wording of this -- and I apologize for rethinking it,

22  but I am inclined to revise this to say the defendant

23  is prohibited from personally carrying or possessing

24  firearms, ammunition, destructive device or other

25  dangerous weapons, deleting the word owning because

1    that could be prone to misinterpretation in this

2    factual setting.

3                    MR. ABELY:  I think that is more clear.

4    I agree.

5                    THE COURT:  Is that acceptable to the

6    government?  Ms. Hodde, I assume that's closer to what

7    you had in mind.

8                    MS. HODDE:  It is.  And I just want to be

9    clear that this is for the period that he is on

10   probation, for the one-year period of probation.

11                   THE COURT:  Correct.  These are special

12   conditions of supervision that apply for the one-year

13   period of probation.  And what I am trying to guard

14   against is a misunderstanding that we end up in a

15   revocation over unanticipated consequences, so it is

16   just to have some clarity in this.

17                   So I am going to restate this to be the

18   defendant is prohibited from personally carrying or

19   possessing firearms, ammunition, destructive devices

20   or other dangerous weapons.  Bear with me, change

21   something else.

22                   And I am going to change the standard

23   condition of the Court to read the defendant shall not

24   personally possess a firearm, ammunition, destructive

25   device or other dangerous weapon.  So that that is

1  clear.  And that's the condition that is imposed by

2  default by statute, and so I am tailoring it to this

3  particular case.

4           So speaking of the standard conditions of

5  the Court, I want to mention those as well, which is

6  while on probation, Mr. Manookian cannot commit

7  another federal, state or local crime.  He cannot

8  leave the judicial district without permission.  He

9  has to report as directed to the probation office.  He

10  has to be truthful in all answers to the inquiries of

11  the probation office.  He has to meet his family

12  responsibilities.  He has to work at a regular

13  occupation unless excused.  He has to notify the

14  probation officer at least ten days prior to any

15  change of residence or employment.  He has to refrain

16  from excessive use of alcohol and cannot use or

17  possess any controlled substances.

18           Mr. Abley, do you want to state your

19  position about whether this should be a drug testing

20  condition?

21           MR. ABELY:  Your Honor, I am not aware of

22  any facts that would make such a condition

23  appropriate.  If I recall correctly, there was such a

24  provision in pretrial release conditions, and

25  Mr. Manookian has had no issues being on pretrial

1    release.

2           THE COURT: Okay, thank you. Ms. Hodde.

3           MS. HODDE: Mr. Abley is correct. He has

4    taken several drug screens while on pretrial

5    supervision. Has always passed those, and I request

6    the Court not impose that as a condition of probation.

7    There is no indication that that is an issue at all.

8           THE COURT: Okay. I am going to waive

9    the drug testing condition as part of the judgment.

10    But impose the condition that the defendant refrain

11    from excessive use of alcohol and cannot use or

12    possess any unauthorized controlled substances or

13    illegal controlled substances. Cannot frequent places

14    where controlled substances are sold or used. Cannot

15    associate with persons engaged in criminal activity.

16    He has to permit the probation officer to visit him

17    and confiscate any contraband that's in plain view.

18           He has to notify the probation officer

19    within 72 hours of being arrested or questioned by law

20    enforcement. He cannot act as an informer without

21    Court permission. He has to notify third parties of

22    risks that may be occasioned by his criminal record.

23    As I indicated, I am waiving the drug testing

24    requirement.

25           And I have changed the standard firearm

1   condition to be that he cannot personally possess a

2   firearm, destructive device or other dangerous weapon.

3   And he has to notify the U.S. Attorney's office within

4   30 days of any change of name or residence until all

5   monetary sanctions are paid.

6           As I indicated, there is a thousand

7   dollar fine imposed.  The $25 special assessment is

8   hereby imposed.  And, of course, if he's paid it, he

9   should get credit for it.  Restitution is not an

10  issue.  Forfeiture is not an issue.

11          I need to advise Mr. Manookian of his

12  right to appeal.  I am going to hand him a notice of

13  appeal form through the court officer.  You have 14

14  days to file a notice of appeal.  If you are unable to

15  pay the cost of an appeal, you may appeal as a pauper.

16  If you direct your lawyer to file a notice of appeal,

17  your lawyer will.  If you ask the clerk of court to

18  file, the clerk will.  Again, you have 14 days to file

19  a notice of appeal.

20          This question is directed to the lawyers.

21  Do the parties have any objections to the sentence

22  just pronounced that have not been previously

23  raised?  That's the question required by *United States*

24  *versus Bostic*.

25          MS. HODDE:  No, Your Honor.

1        MR. ABELY:  No, Your Honor.  And
2   Your Honor alluded to this earlier, but I did just
3   want to formally move for dismissal of Counts 1, 2, 4,
4   5 and 6 of the superseding information.
5        THE COURT:  Okay.  Counts 1, 2, 4
6   through 6 are dismissed as part of the plea agreement
7   and on the motion of the government.
8        Anything else that we need to discuss
9   today?
10       MS. HODDE:  No, Your Honor.  Thank you.
11       MR. ABELY:  No, Your Honor.  Thank you.
12       THE COURT:  Okay.  Thank you.  Judgment
13  will be entered as stated.  Thank you.
14       (Which were all of the proceedings had in
15  the above-captioned cause on the above-captioned
16  date.)
17
18
19
20
21
22
23
24
25

# REPORTER'S CERTIFICATE PAGE

I, Roxann Harkins, Official Court Reporter for the United States District Court for the Middle District of Tennessee, in Nashville, do hereby certify:

That I prepared this transcript from the steno notes of Cathy Leigh, Official Court Reporter, when the proceedings held in open court on June 19, 2015, in the matter of UNITED STATES OF AMERICA  v. BRIAN MANOOKIAN , Case No. 3:14-cr-007-2 ; and that the foregoing transcript is a true and accurate transcript to the best of my abilities.

This is the 20th day of November, 2019.

s/ Roxann Harkins____
ROXANN HARKINS, RPR, CRR
Official Court Reporter